UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MURAS KASYMKULOV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00723-JPH-MG |
| | ) | |
| SAMUEL OLSON,<br>DAVID VENTURELLA,<br>MARKWAYNE MULLIN,<br>TODD BLANCHE,<br>WARDEN, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Noncitizen Muras Kasymkulov is detained on behalf of U.S. Immigration and Customs Enforcement ("ICE"). Mr. Kasymkulov seeks a writ of habeas corpus under 28 U.S.C. § 2241 requiring Respondents to release him from custody.

The Court grants the petition to the extent that it orders Respondents to either afford Mr. Kasymkulov a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations or release him from custody under reasonable conditions of supervision.

## I. Background

Mr. Kasymkulov is a native and citizen of Kyrgyzstan. Dkt. 1, ¶ 15. On July 12, 2022, the Department of Homeland Security ("DHS") encountered him at the Tecate, California, Port of Entry; processed him as an "arriving alien"; and granted him discretionary parole through September 13, 2022. *Id.*; dkt.

1-2 at 5–6. On October 15, 2022, DHS issued Mr. Kasymkulov a Notice to Appear charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document." Dkt. 1-2 at 1. Mr. Kasymkulov sought asylum and withholding of removal, and he was granted employment authorization through September 11, 2030. *Id.* at 6–7. He has a hearing on his asylum application scheduled for April 30, 2027. *Id.* at 9.

On October 27, 2026, Indiana State Police stopped Mr. Kasymkulov while he was traveling in his vehicle. Dkt. 9-1 at 6. ICE officers were notified, arrested Mr. Kasymkulov, and took him into custody. *Id.* at 6, 8.

Mr. Kasymkulov was originally held at the Clay County Jail and later transferred to the Greene County Jail in Springfield, Missouri, where he remains. *See* https://locator.ice.gov/odls/#/search (last accessed Nov. 16, 2026). Because Mr. Kasymkulov filed this petition while he was incarcerated at Clay County Jail, this Court retains jurisdiction to review it. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (discussing *Ex parte Endo*, 323 U.S. 283 (1944)) ("[W]hen the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.").

Mr. Kasymkulov's removal proceedings remain pending.

## II. Discussion

Mr. Kasymkulov claims that Respondents have incorrectly classified him as an "arriving alien" and refused him a bond hearing under 8 U.S.C. § 1225(b). Dkt. 1, ¶ 5. He contends that his detention without bond violates the Immigration and Nationality Act ("INA"), the Due Process Clause of the Fifth Amendment, and the Suspension Clause. *Id.*, ¶¶ 56–70. Respondents argue that Mr. Kasymkulov became an "arriving alien" when his parole expired on September 13, 2022, so he is not entitled to a bond hearing. Dkt. 9.

Consistent with this Court's previous orders, the Court concludes that Mr. Kasymkulov's detention is governed by 8 U.S.C. § 1226(a) and is unlawful because he has not been afforded a bond hearing. Accordingly, the Court orders Respondents to afford him a bond hearing or release him from detention.

### A. *Cirrus Rojas*

On July 30, 2026, the Seventh Circuit decided *Cirrus Rojas v. Olson*, 183 F.4th 909 (7th Cir. 2026). In *Cirrus Rojas*, the Seventh Circuit determined that 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention scheme applies only to noncitizens who are "seeking admission" to the United States: "Aliens present in the country without admission and not 'seeking admission' fall under Section 1226, not Section 1225(b)(2)(A), and are eligible for bond hearings subject to the INA's other requirements." *Id.* at 915. "Admission means 'lawful entry . . . into the United States after inspection and authorization.'" *Id.* at 918 (quoting *Sanchez v. Mayorkas*, 593 U.S. 409, 411 (2021)). "The only time a

noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1239 (10th Cir. 2026), *quoted in Cirrus Rojas*, 183 F.4th at 920.

Here, Mr. Kasymkulov was arrested in Indiana years after he entered the United States. He was not then, and is not now, seeking to enter the United States at the border. Mr. Kasymkulov sought asylum and withholding of removal, which is a lawful status different from admission. *See Cirrus Rojas*, 183 F.4th at 914 ("Cirrus Rojas is not seeking admission: the relief he now seeks, asylum and withholding of removal, is not admission as the statute and Supreme Court case law use that term."). Further, Mr. Kasymkulov's immigration record shows he may be categorically inadmissible because he is charged under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as not possessing valid documentation required under the INA. Dkt. 1-1 at 1; *see Cirrus Rojas*, 183 F.4th at 914–15. He is not "seeking admission" as *Cirrus Rojas* applies the phrase. Therefore, under the now-settled law of this Circuit, Mr. Kasymkulov's detention cannot be governed by § 1225(b)(2)(A) and is not mandatory.

Respondents argue that *Cirrus Rojas* does not apply here because that case "involved a petitioner who entered the United States without inspection or admission in 2018 and who did not present himself at a port of entry." Dkt. 9 at 2, n.1. To the extent that these facts distinguish *Cirrus Rojas* from this case, Respondents have not persuaded the Court that the distinction is legally significant. The bottom line of *Cirrus Rojas* is that § 1225(b)(2)(A) applies only to applicants for admission who are *actually seeking* admission. Respondents

do not explain how Mr. Kasymkulov is actively seeking admission any more than Mr. Cirrus Rojas was when he was arrested in the interior of the United States without active parole or any other legal status.

**B. Effect of Parole Expiration**

Respondents argue that Mr. Kasymkulov is subject to mandatory detention under § 1225(b)(2)(A) because he became an "arriving alien" when his parole expired in September 2022. Dkt. 9 at 4–5. The Court has repeatedly rejected this argument, *see, e.g.*, *Tologonov v. Warden*, No. 2:26-cv-00413-JPH-MJD, dkt. 14 at 10–13 (S.D. Ind. July 10, 2026); *Crespo-Armas v. Mullin, et al.*, No. 2:26-cv-00543-JPH-MG, dkt. 15 at 4–6 (S.D. Ind. Sept. 11, 2026); *see also Aliev v. Crowley, et al.*, No. 2:26-cv-00291-JPH-MJD, dkt. 12 at 5–9 (S.D. Ind. May 7, 2026) (decided before *Cirrus-Rojas*), and rejects it again here.

The Secretary of Homeland Security may permit a noncitizen to enter the United States on parole according to 8 U.S.C. § 1182(d)(5)(A). "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien *shall forthwith return or be returned to the custody from which he was paroled*." *Id.* (emphasis added). Additionally, the former parolee "shall continue to be dealt with in the same manner as that of *any other applicant for admission* to the United States." *Id.* (emphasis added).

Respondents urge the Court not to follow the holding of *Tologonov*, arguing that the "custody from which" Mr. Kasymkulov "was paroled" was that of an "arriving alien" as defined by 8 C.F.R. § 1001.1(q). Dkt. 9 at 5–7. That regulation states that an arriving alien is "an applicant for admission coming or

attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q). "An arriving alien remains an arriving alien even if paroled . . . and *even after any such parole is terminated or revoked.*" *Id.* (emphasis added). In short, as Respondents see it, Mr. Kasymkulov's parole permitted him to physically enter the United States, but he never ceased to be—for legal purposes—an arriving alien and applicant for admission at a port of entry. When his parole expired, he reverted to that position by operation of the INA and became, once again, subject to compulsory detention under § 1225(b)(2)(A).

Respondents' position cannot be squared with *Cirrus Rojas*. Section 1225(b)(2)(A) does not mandate the detention of "arriving aliens" as defined by regulation or even "applicants for admission" as referenced in § 1182(d)(5)(A). Section 1225(b)(2)(A) applies only to an applicant for admission *who is also seeking admission*—which is to say a person actually seeking lawful entry into the United States after inspection and authorization at a border. *Cirrus Rojas*, 183 F.4th at 914.

Respondents' reliance on 8 C.F.R. § 1001.1(q)—an agency regulation—is misplaced. Its sole legal significance is to clarify how the agency applies the term "arriving alien." Through § 1225(b)(2)(A), Congress authorized the government to subject specified noncitizens to automatic, indefinite detention during removal proceedings. In *Cirrus Rojas*, the Seventh Circuit interpreted that authority as extending only to noncitizens actually seeking admission. The government cannot expand its congressionally granted authority by pointing to a definition in its own regulations.

Finally, as this Court explained in *Tologonov*, § 1182(d)(5)(A) directs only that a former parolee be returned to the custody—but not necessarily the detention—from which he was paroled. *See Tologonov*, dkt. 14 at 12–13 (discussing *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025)); *see also Chirinos v. Mullin*, No. 26-CV-369, 2026 WL 905416, at *3 (E.D. Wis. Mar. 30, 2026) ("The word 'custody' [in § 1182(d)(5)(A)] should not be read to mean 'detention' when Congress could have chosen to say 'detention' but did not."). This means Mr. Kasymkulov has lost the benefits associated with parole and must be treated as any other noncitizen arrested in the interior of the United Sates pursuant to a warrant authorized by § 1226(a). That Mr. Kasymkulov's parole expired, however, does not mean he is now "seeking admission" such that he is subject to compulsory detention under § 1225(b)(2)(A). Rather, pursuant to *Cirrus Rojas*, Mr. Kasymkulov's detention is governed by § 1226(a), and he is eligible for discretionary release on bond.

## III. Scope of Relief

Mr. Kasymkulov argues that he is entitled to immediate release from custody, which is the customary remedy in habeas proceedings. *See DHS v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). The Court finds that immediate release would not be in the interests of justice. The Court has found that Mr. Kasymkulov is subject to § 1226(a), which gives the government discretion to "continue to detain" him.

8 U.S.C. § 1226(a)(1). Mr. Kasymkulov's custody is therefore not unlawful because he is detained but because he has not received the bond hearing that the law requires.

Mr. Kasymkulov also asks the Court to place specific constraints on the immigration judge's decision-making at a bond hearing. The issue presented to the Court is whether Mr. Kasymkulov's current detention is in violation of the laws of the United States. The Court has found his detention does violate U.S. law because Mr. Kasymkulov is subject only to discretionary detention under § 1226(a) and therefore entitled to an individualized bond hearing, which he has not been given. The Court has ordered Respondents to give Mr. Kasymkulov an individualized bond hearing or release him. At a bond hearing, the immigration judge might order Mr. Kasymkulov released on bond or the judge might deny him release on bond for reasons that do not turn on the burden of proof or the evidentiary standard. So, the Court denies the request to place specific constraints on the immigration judge's decision-making at a bond hearing.

Because the Court has found that Mr. Kasymkulov's detention violates the INA, it does not reach his arguments that his detention violates the Fifth Amendment or the Suspension Clause. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

## IV. Conclusion

The petition for a writ of habeas corpus is **granted** insofar as Respondents will have **ten days**[1] to either (1) provide Mr. Kasymkulov with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations or (2) release him from detention under reasonable conditions of supervision. Respondents must notify Mr. Kasymkulov's counsel of the setting of any bond hearing. Respondents must file documentation certifying that they have either provided the bond hearing or released Mr. Kasymkulov within **two days** after the hearing or his release, whichever is applicable.

The petition is **denied** to the extent it seeks immediate release.

The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 11/16/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

[1] The parties may extend this deadline by agreement without need for further action by the Court.